**Aaron John Lyttle**
**Gregory C. Dyekman**
**Long Reimer Winegar LLP**
**P.O. Box 87**
**Cheyenne, WY 82003**
**alyttle@lrw-law.com**
**gdyekman@lrw-law.com**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| HORIZONTAL TECHNOLOGY, INC. | ) | Civil Action No. 21-cv-00083-SWS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PROSURV, LLC and DOMINIC WHITHAM, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ANSWER, DEFENSES AND COUNTERCLAIMS

Defendants Prosurv, LLC and Dominic Whitham and through their counsel Long, Reimer, Winegar LLP file this Answer, Defenses and Counterclaims:

### Introduction

1.     This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. (the "**Copyright Act**").

**ANSWER**:  Admitted.

2.     Plaintiff, Horizontal Technology Inc. ("HTI") is the owner of the copyrights in the following works, all of which have been registered with the U.S. Copyright Office:

(i)     DataTraX Drill, Reg. No. TXu002248226 (2021)

(ii)     DataTraX CAD, Reg. No. TXu002248199 (2021)

58227584;1

(iii)   <u>DataTraX ARM, Reg. No. TXu002248230 (2021)</u>

(iv)   <u>DataTraX Earth, Reg. No. TXu002248222 (2021)</u>

(v)   <u>Prosurv 1, Reg. No. TXu000397697 (1989)</u>

(vi)   <u>Prosurv; V. 8.5, Reg. No. TXu000493548 (1991)</u>

(vii)   <u>Prosurv II, Reg. No. TXu000627500 (1994)</u>

(viii)   <u>Prosurv 2000, Reg. No. TXu000960777 (2000)</u>

**ANSWER**:  Denied.

3.      Defendants are infringing Plaintiffs copyrights.

**ANSWER**:  Denied.

## Jurisdiction and Venue

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (patents, copyrights, trademarks and unfair competition). This court has supplemental jurisdiction over the other claims asserted herein, pursuant to 28 U.S.C. § 1367.

**ANSWER**:  Admitted.

5.      This Court has personal jurisdiction over the Defendants because (i) Defendants committed the tortious conduct alleged in this Complaint in this State, (ii) Defendants reside or were formed in this State and/or (iii) Defendants have engaged in substantial and not isolated business activity in this State.

**ANSWER**:  Admitted.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because: (i) a substantial part of the events or omissions giving rise to the claims occurred in this District; (ii) the Defendants reside or conduct business (and therefore can be found) in this District; and

58227584;1

(iii) venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases) because Defendant Whitham and Defendant Prosurv's agent reside or may be found in this District.

**ANSWER**:  Admitted.

## Parties

7.      Plaintiff HTI is a corporation organized and existing under the laws of the State of Texas and has its principal place of business located at 16863 Warren Ranch Road, Hockley Texas 77447.

**ANSWER**:  Admitted.

8.      Defendant Prosurv, LLC ("Prosurv") is a limited liability company organized and existing under the laws of the State of Wyoming and has its principal place of business located at 185 Louis Lamour Lane, Clark, WY 82435.

**ANSWER**:  Admitted.

9.      Defendant Dominic John Whitham ("Whitham") is resident of the State of Wyoming and resides at 185 Louis Lamour Lane, Clark, WY 82435.

**ANSWER**:  Admitted.

## Factual Background Common to All Counts

10.      As one of its services, HTI provides steering services and the rental and sale of drilling tools within the Horizontal Directional Drilling ("HDD") industry.

**ANSWER**:  Admitted.

11.      One aspect of HDD is providing a means of installing underground utilities or trenchless crossings within a pre-determined underground path. The drill bit and corresponding underground path are governed by a drilling rig that is located on the ground surface.

**ANSWER**:  Admitted.

58227584;1

12.     HDD is a technique that may be utilized when conventional methods are not desirable or available.

**ANSWER**: Admitted.

13.     During the drilling process, it is important to know the drill bit's current location within the underground drill path. Knowing the current location of the drill bit reduces the likelihood that the drilling process will impact other underground structures which are in proximity to the HDD drill bit.

**ANSWER**: Admitted.

14.     As a complement to HTI's steering services, HTI has introduced a DC (magnetic) tracking software that uses the running line or drill path as the point of reference to determine the exact location of the drill bit in reference to the running line. There are multiple operational advantages in utilizing HTI's tracking software, especially in situations where the running line has horizontal curves, including reduced risk of survey errors or misguided pilot holes.

**ANSWER**: Denied.

15.     Defendant Whitham is the President of Defendant Prosurv.

**ANSWER**: Admitted.

16.     At some time before 2017, HTI engaged Whitham to develop land survey software to complement HTI's existing tracking software. Pursuant to this engagement, Whitham created a suite of computer software or programs for HTI, which were identified as the DataTraX suite of products (the "DataTraX Programs"). The DataTraX Programs include but are not limited to the computer programs DataTraX Drill, DataTraX CAD, DataTraX ARM and DataTraX Earth. Whitham was paid by HTI for the above described services as those services were rendered.

**ANSWER**: Denied.

58227584;1

17.     The DataTraX Programs are used within the HDD industry to track an underground drill bit's location during the drilling process.

**ANSWER**:  Admitted.

18.     Whitham represented and warranted to HTI that he had incorporated into the DataTraX Programs the computer software code in two computer programs he had created independently, (i) Prosurv Baselines, and (ii) Prosurv State Plane Coordinates.

**ANSWER**:  Admitted.

19.     On or about July 26, 2017, Defendant Whitham transferred to HTI all of his right, title and interest in and to the DataTraX Programs, including Prosurv Baselines and Prosurv State Plane Coordinates, pursuant to a written agreement prepared by Whitham (hereinafter referred to as the "2017 Transfer"). As a result of the 2017 Transfer, and as expressly agreed by Whitham, HTI acquired the copyright in all computer code contained within the DataTraX Programs, including Prosurv Baselines and Prosurv State Plane Coordinates. A true and correct copy of the 2017 Transfer is attached as Exhibit 1.

**ANSWER**:  Denied.

20.     As consideration for the 2017 Transfer, HTI has paid, and Whitham has accepted, full payment of the purchase price of $80,000.00, as specified by Whitham in the 2017 Transfer.

**ANSWER**:  Denied.

21.     After the 2017 Transfer was completed, an employee of HTI, in the scope of his employment, contributed additional computer code to the DataTraX Programs, which code is a work for hire with regard to which HTI is the author pursuant to 17 U.S.C. § 101 and 17 U.S.C. § 201(b).

**ANSWER:**  Defendants are without sufficient information to admit or deny this allegation and therefore deny it.

22.     HTI has obtained copyright registrations from the U.S. Copyright Office for the following DataTraX Programs, including both the material Whitham transferred to HTI as well as the newly created code of which HTI is the author: (a) DataTraX Drill, Reg. No. TXu002248226, (b) DataTraX CAD, Reg. No. TXu002248199, (c) DataTraX ARM, Reg. No. TXu002248230, and (d) DataTraX Earth, Reg. No. TXu002248222. All of the above-referenced copyright registrations have an effective date, of April 11, 2021.

**ANSWER:**  Defendants are without sufficient information to admit or deny this allegation and therefore deny it.

23.     In addition to the Prosurv Baselines and State Plane Coordinates computer programs, which were included in the DataTraX Programs transferred to HTI pursuant to the 2017 Transfer, Whitham represented and warranted to HTI that, in order to use the DataTraX Programs, HTI would need to license from Whitham another set of computer programs he had independently created, which Whitham identified as the **"Prosurv Data Collection"**.

**ANSWER:**  Denied.

24.     The Prosurv Data Collection is comprised of a number of different computer programs or versions of computer programs, the copyrights for which Whitham had registered with the U.S. Copyright Office, as follows:

a.      Prosurv 1, Reg. No. TXu000397697 (registered 1989);

b.      Prosurv; V. 8.5, Reg. No. TXu000493548 (registered 1991);

c.      Prosurv II, Reg. No. TXu000627500 (registered 1994); and

d.      Prosurv 2000, Reg. No. TXu000960777 (registered 2000).

**ANSWER:**  Admitted.

- 6 -

25.     The Prosurv Data Collection was subsequently rebranded by Whitham as DataTraX Field Solver, so that all occurrences of the term "Prosurv" were changed to "DataTraX Field Solver" throughout the source code for the Prosurv Data Collection.

**ANSWER:** Admitted.

26.     On April 20, 2018, pursuant to a written agreement prepared by Whitham (hereinafter referred to as the "2018 Transfer"), Defendant Whitham transferred to HTI all of his right, title and interest in and to the computer software known as the Prosurv Data Collection a/lc/a DataTraX Field Solver. As a result of the 2018 Transfer, and as expressly agreed by Whitham, HTI acquired the copyright in all computer code in the Prosurv Data Collection, including the above-referenced copyright registrations. A true and correct copy of the 2018 Transfer is attached as Exhibit 2.

**ANSWER:** Denied.

27.     As consideration for the 2018 Transfer, HTI has paid, and Whitham has accepted, full payment of the purchase price of $10,000.00, as requested and specified by Whitham in the 2018 Transfer.

**ANSWER:** Denied.

28.     On May 4, 2018, the United States Copyright Office certified the 2018 Transfer transferring Whitham's copyrights to HTI as Document Number: V9961D149 identifying the following list of titles: 001 Prosurv; v. 8.5 / Reg. TXu493548 (1991); 002 Prosurv 1 / Reg. TXu397697 (1989); 003 Prosurv 2000 / Reg. TXu960777 (2000); and 004 Prosurv II / Reg. TXu627500 (1994). True and correct copies of documents evidencing the recording of the 2018 Transfer are attached as Exhibit 3.

58227584;1

**ANSWER:** Defendants are without sufficient information to admit or deny this allegation and therefore deny it.

29.   HTI is currently the sole and undivided owner of all right, title and interest in and to the copyrights in the DataTraX Programs (including Prosurv Baselines and Prosurv State Plane Coordinates) and the Prosurv Data Collection a/k/a DataTraX Field Solver (collectively, the "HTI Software"), as summarized below:

| HTI Software | Transfer | Programs/Versions |
|---|---|---|
| DataTraX Programs | July 26, 2017 | DataTraX Drill, Reg. No. TXu002248226 (2021) |
| | | DataTraX CAD, Reg. No. TXu002248199 (2021) |
| | | DataTraX ARM, Reg. No. TXu002248230 (2021) |
| | | DataTraX Earth, Reg. No. TXu002248222 (2021) |
| | | (Prosurv Baselines and State Plane Coordinates incorporated into other DataTrax Programs.) |
| Prosurv Data Collection a/k/a DataTraX Field Solver | April 20, 2018 | Prosurv 1, Reg. No. TXu000397697 (1989) |
| | | Prosurv; V. 8.5, Reg. No. TXu000493548 (1991) |
| | | Prosurv II, Reg. No. TXu000627500 (1994) |
| | | Prosurv 2000, Reg. No. TXu000960777 (2000) |

**ANSWER:** Defendants are without sufficient information to admit or deny this allegation and therefore deny it.

30.   The HTI Software is used by HTI within the HDD industry to track underground drill bits during the drilling process and provide related functionality.

**ANSWER:** Admitted.

31.   Despite Whitham having transferred his copyrights in the HTI Software to HTI as set forth above, the Defendants are currently marketing, licensing, distributing, selling and offering

58227584;1

for sale virtually identical software identified by Defendants as Prosurv GeoMax Crossings — v.1.01.0, or GeoMax HDD Crossings (the **"GeoMax Software").**

    **ANSWER:** Denied.

32.    The GeoMax Software is marketed, licensed, distributed, sold and offered for sale by Defendants within the HDD industry in direct competition with the HTI Software and to perform the same functions as the HTI Software, including but not limited to tracking underground drill bits during the HDD drilling process.

    **ANSWER:** Denied.

33.    The HTI employee who created HTI's work-for-hire contributions to the HTI Software has used a publicly available and widely used computer program to decompile and generate a mirror version of the source code of portions of the publicly available demonstration version of GeoMax Software, and has done the same with corresponding portions of the HTI Software. The mirror versions of the GeoMax Software source code are virtually identical to the mirror versions of the corresponding HTI Software source code. This could only have occurred because the GeoMax Software is a copy of the HTI Software.

    **ANSWER:** Defendants are without sufficient information to admit or deny this allegation and therefore deny it.

34.    The software used to mirror the GeoMax Software and HTI Software source code as set forth above is generally recognized in the field of computer programming as producing accurate results.

    **ANSWER:** Defendants are without sufficient information to admit or deny this allegation and therefore deny it.

58227584;1

35.     Upon information and belief, the Defendants copied the HTI Software and marketed and sold it as the GeoMax Software within the HDD industry because it would have taken the Defendants far longer to write new code that would accomplish the same functions.

**ANSWER:** Denied.

36.     Upon information and belief, the HTI Software copied, marketed and sold by the Defendants as the GeoMax Software includes all or a substantial part of the protectable elements of the programs DataTraX Drill, DataTraX CAD, DataTraX ARM, DataTraX Earth and DataTraX Field Solver.

**ANSWER:** Denied.

37.     The Defendants' copying of the HTI Software extends to the look and feel of its user interface. Anyone familiar with the user interface of the HTI Software who uses the GeoMax Software will immediately recognize that the two programs look, feel and operate the same way. Anyone who has used the HTI Software would be able to use the GeoMax Software without any additional training. This would not be true with regard to competing software products on the market, the user interfaces for which operate in a completely different manner, and which have a completely different look and feel.

**ANSWER:** Denied.

38.     The GeoMax Software marketed and sold by the Defendants within the HDD market is substantially similar to the HTI Software. To the extent that there are any differences between the GeoMax Software and the HTI Software, the GeoMax Software is a derivative work of the HTI Software since it is based on or derived therefrom.

**ANSWER:** Denied.

39.     The Defendants' have actually marketed and sold their virtually identical GeoMax Software to the prospective HDD market and to existing customers of HTI, thereby depriving HTI of the opportunity to license or provide software services to the HDD market or to said customers, damaging HTI's goodwill, and causing HTI to lose its position in the competitive HDD marketplace not just for software but for its collective HDD services in general.

**ANSWER:** Denied.

40.     HTI's ability to offer the prospective HDD market or its existing customers access to and use of the HTI Software as a complement to its other services significantly enhances HTI's competitive position in the marketplace for all of the services offered by HTI, not just software. If the Defendants are permitted to continue to infringe HTI's copyrights and use HTI's trade secret source code during the pendency of this litigation, the Defendants' infringement and misappropriation will continue to interfere with HTI's business relationships with actual and prospective customers, siphon customers away from HTI, damage HTI's goodwill, and cause HTI to lose its position in the competitive marketplace not just for software but for its HDD services in general. The resulting erosion of HTI's competitive market position, harm to its business reputation, and loss of goodwill constitute irreparable harm, because there is no way to determine or calculate the actual damages caused by the Defendants' wrongful acts.

**ANSWER:** Denied.

41.     Prior to filing this lawsuit, HTI made written demand upon the Defendants to cease and desist from using HTI's Copyrights.

**ANSWER:** Admitted.

42.     After receiving notice of HTI's cease and desist letters, the Defendants have refused to cease or desist in marketing, licensing, distributing or offering for sale HTI's Copyrights.

58227584;1

**ANSWER:** Denied.

43.     The Defendants are currently offering to provide, license or sell GeoMax Software.

**ANSWER:** Admitted.

44.     HTI has retained counsel and is obligated to pay said counsel a reasonable fee for its services.

**ANSWER:** Defendants are without sufficient information to admit or deny this allegation and therefore deny it.

45.     All conditions precedent has occurred or have been performed by HTI.

**ANSWER:** Defendants are without sufficient information to admit or deny this allegation and therefore deny it.

**COUNT I**
**Direct Copyright Infringement Against Defendants**

46.     The allegations contained in paragraphs 1-45 are hereby re-alleged as if fully set forth herein.

**ANSWER:** Defendants restate their answers to the preceding paragraphs as if fully stated herein.

47.     HTI is the sole and undivided owner of all right, title and interest in and to the copyrights in the HTI Software.

**ANSWER:** Denied.

48.     The Defendants have copied protectable elements of the HTI Software, and those protectable elements comprise a substantial part of the HTI Software when it is considered as a whole.

**ANSWER:** Denied.

58227584;1

49. The Defendants have infringed and are infringing HTI's copyrights in the HTI Software by marketing, licensing, distributing, selling and offering for sale the GeoMax Software.

**ANSWER:** Denied.

50. HTI did not authorize, permit or consent to the Defendants' marketing, licensing, distributing, selling or offering for sale the HTI Software.

**ANSWER:** Denied.

51. As a result of the foregoing, the Defendants have violated HTI's exclusive right to:

    a. Reproduce the works in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

    b. Distribute copies of the works to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 50; and

    c. Create derivative works based upon the copyrighted work, in violation of 17 U.S.C. §§ 106(2) and 501.

**ANSWER:** Denied.

52. The Defendants' infringements were committed willfully within the meaning of 17 U.S.C. § 504(c)(2).

**ANSWER:** Denied.

53. HTI is entitled to preliminary and permanent injunctive relief prohibiting the Defendants from infringing the HTI Software, because:

    a. HTI is likely to succeed on the merits of its claims against the Defendants;

    b. There is no way to determine or calculate the dollar amount of the irreparable harm HTI will sustain due to the erosion to HTI's competitive market position, harm to its business reputation, and loss of goodwill resulting from the Defendants' infringement of HTI's copyrights in the HTI Software.

    c. The balance of equities tips in HTI's favor; and

    d. An injunction would be in the public interest.

**ANSWER:** Denied.

- 13 -

## COUNT II
### Misappropriation of Trade Secrets — Defend Trade Secrets Act ("DTSA")
### (18 U.S.C. § 1836)

54.     The allegations contained in paragraphs 1-45 and 47-53 are hereby re-alleged as if fully set forth herein.

**ANSWER:** Defendants restate their answers to the preceding paragraphs as if fully stated herein.

55.     The source code in the HTI Software constitutes trade secrets pursuant to the Defend Trade Secrets Act **("DTSA"),** 18 U.S.C. § 1836, because: (a) HTI has taken reasonable measures to keep such information secret; and (b) the information derives economic value from not being generally known or readily ascertainable by others to whom the information would be valuable.

**ANSWER:** Denied.

56.     The trade secret source code in the HTI Software relates to goods and services HTI provides in interstate commerce, which are commercialized through payments in interstate commerce.

**ANSWER:** Denied.

57.     HTI has taken reasonable measures to maintain the secrecy of the source code in the HTI Software by, *inter alia,* limiting access to the source code to a very small number of employees who need access it, and maintaining the source code on a computer system accessible only by password and protected by other security measures.

**ANSWER:** Defendants are without sufficient information to admit or deny this allegation and therefore deny it.

58.     By marketing, licensing, distributing, selling and offering for sale the GeoMax Software, the Defendants have misappropriated HTI's trade secret source code without HTI's

express or implied consent, because they know that the GeoMax Software consists largely if not wholly of HTI's trade secret source code, that their knowledge of said source code was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, and that they owe such a duty to HTI.

**ANSWER:** Denied.

59.     Pursuant to the DTSA, HTI is entitled to an award of the damages for actual loss caused by the Defendants' misappropriation of HTI's trade secrets, as well as damages for any unjust enrichment caused by said misappropriation that is not addressed in computing damages for actual loss.

**ANSWER:** Denied.

60.     The Defendants' misappropriation of HTI's trade secret source code is intentional, knowing, willful and malicious, and therefore HTI is entitled to an award of exemplary damages pursuant to the DTSA.

**ANSWER:** Denied.

61.     Upon information and belief, if the Defendants are not enjoined from misappropriating HTI's trade secret information, they will continue to do so for their own benefit and to HTI's detriment.

**ANSWER:** Denied.

62.     HTI is entitled to preliminary and permanent injunctive relief prohibiting actual or threatened misappropriation of HTI's trade secrets by the Defendants, because there is no way to determine or calculate the dollar amount of the irreparable harm HTI will sustain due to the resulting erosion to HTI's competitive market position, harm to its business reputation, and loss of goodwill.

58227584;1

**ANSWER:** Denied.

## COUNT III
## Misappropriation of Trade Secrets — Uniform Trade Secrets Act ("UTSA")
### (Wyo. Stat. Ann. § 40-24-101 et seq.)

63.     The allegations contained in paragraphs 1-45, 47-53 and 55-62 are hereby re-alleged as if fully set forth herein.

**ANSWER:** Defendants restate their answers to the preceding paragraphs as if fully stated herein.

64.     The source code in the HTI Software constitutes trade secrets pursuant to the Uniform Trade Secrets Act **("UTSA"),** Wyo. Stat. Ann. § 40-24-101 et seq., because: (a) HTI has taken reasonable measures to keep such information secret; and (b) the information derives independent economic value from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.

**ANSWER:** Denied.

65.     By marketing, licensing, distributing, offering for sale and selling the GeoMax Software, the Defendants have misappropriated HTI's trade secret source code without HTI's express or implied consent, because they know that the GeoMax Software consists largely if not wholly of HTI's trade secret source code, that their knowledge of said source code was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, and that they owe such a duty to HTI.

**ANSWER:** Denied.

66.     Pursuant to Wyo. Stat. Ann. § 40-24-103, HTI is entitled to an award of the damages resulting from the Defendants' misappropriation of HTI's trade secrets.

**ANSWER:** Denied.

- 16 -

67.     The Defendants' misappropriation of HTI's trade secrets is willful and malicious, and HTI is therefore entitled to an award of exemplary damages pursuant to Wyo. Stat. Ann. § 40-24-103, and costs and attorney fees pursuant to Wyo. Stat. Ann. § 4024-104.

**ANSWER:** Denied.

68.     Pursuant to Wyo. Stat. Ann. § 40-24-102, HTI is entitled to preliminary and permanent injunctive relief prohibiting actual or threatened misappropriation of HTI's trade secrets by the Defendants, because there is no way to determine or calculate the dollar amount of the irreparable harm HTI will sustain due to the resulting erosion to HTI's competitive market position, harm to its business reputation, and loss of goodwill.

**ANSWER:** Denied.

## COUNT IV
## Trade Dress Infringement/Unfair Competition
## (Lanham Act § 43(a); 15 U.S.C. § 1125(a) and Common Law)

69.     The allegations contained in paragraphs 1-45, 47-53 and 55-62 are hereby re-alleged as if fully set forth herein.

**ANSWER:** Defendants restate their answers to the preceding paragraphs as if fully stated herein.

70.     The nonfunctional layout and design elements of the user interface for the **HTI** Software (the **"HTI Trade Dress"**) create a distinctive look and feel and serve the purpose of identifying and distinguishing the HTI Software from the products of other providers of similar goods and services.

**ANSWER:** Denied.

- 17 -

71.     The Defendants' copying of the HTI Software extends to the HTI Trade Dress. Anyone familiar with the HTI Trade Dress who uses the GeoMax Software will immediately recognize that, unlike competing products, the two programs look, feel and operate the same way.

**ANSWER:**  Denied.

72.     HTI used the HTI Trade Dress in commerce before the Defendants began marketing and selling software with a confusingly similar trade dress.

**ANSWER:**  Denied.

73.     The Defendants' infringing use of the HTI Trade Dress is likely to cause confusion, mistake or deception among members of the public as to the source or origin of the Defendants' products, in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and Wyoming common law.

**ANSWER:**  Denied.

74.     The Defendants' conduct was and is being committed willfully and with the intent to deceive the public and to wrongfully trade and profit by use of HTI's Trade Dress and goodwill.

**ANSWER:**  Denied.

75.     HTI has suffered damages and irreparable harm as a result of the Defendants' infringing use of the HTI Trade Dress.

**ANSWER:**  Denied.

## COUNT V
### Breach of Contract

76.     The allegations contained in paragraphs 1-45, 47-53, 55-62 and 70-75 are hereby re-alleged as if fully set forth herein.

**ANSWER:**  Defendants restate their answers to the preceding paragraphs as if fully stated herein.

58227584;1

77.     There are written contractual agreements between HTI and Whitham concerning the transfers of computer software that serve as a basis for this complaint.

**ANSWER:** Denied.

78.     As represented by the 2017 Transfer, Whitham agreed to sell and assign all of Whitham's right, title and interest concerning the DataTraX Programs to HTI.

**ANSWER:** Denied.

79.     The consideration agreed upon or requested by Whitham concerning the 2017 Transfer has been received by Whitham.

**ANSWER:** Denied.

80.     As represented by the 2018 Transfer, Whitham agreed to transfer all of his right, title and interest in the Prosurv Data Collection a/k/a DataTraX Field Solver to HTI.

**ANSWER:** Denied.

81.     The consideration agreed upon or requested by Whitham concerning the 2018 Transfer has been received by Whitham.

**ANSWER:** Denied.

82.     Whitham expressly represented and warranted to HTI that as a result of the 2017 Transfer that HTI would receive the copyright in all computer code in the DataTraX Programs, including Prosurv Baselines and Prosurv State Plane Coordinates.

**ANSWER:** Admitted.

83.     Whitham expressly represented and warranted to HTI that as a result of the 2018 Transfer that HTI would receive the copyright in all computer code in the Prosurv Data Collection a/k/a DataTraX Field Solver.

**ANSWER:** Admitted.

- 19 -

84.     As a result of the 2017 Transfer and the 2018 Transfer, HTI was and is the owner the HTI Software.

**ANSWER:** Denied.

85.     As the owner of HTI Software, HTI is the proper party to bring forth this complaint.

**ANSWER:** Denied.

86.     Defendants have materially breached the 2017 Transfer and the 2018 Transfer agreements since the Defendants are currently marketing, licensing, distributing, selling and offering for sale virtually identical software now identified by Defendants as the GeoMax Software. The GeoMax Software includes the essence of the computer programs (HTI Software) which were previously transferred by Whitham to HTI.

**ANSWER:** Denied.

87.     Whitham has breached the underlying transfer agreements since the Defendants continue to market, license, distribute, sell or offer for sale the same or similar software which was transferred by Whitham to HTI. Whitham has materially breached the underlying agreements by diluting the very purpose of the above described transfer agreements. As a result of the Defendants utilizing the GeoMax Software, HTI is deprived of the benefit it reasonably expected arising from the 2017 Transfer and the 2018 Transfer and the resulting ownership rights found within the transferred software.

**ANSWER:** Denied.

88.     As a result of the Whitham's breach, HTI has retained an attorney and HTI seeks reimbursement for its attorney's fees

**ANSWER:** Denied.

58227584;1

89.     As a direct and proximate result of the Whitham's breach, HTI seeks to recover damages for all foreseeable injuries or to obtain equitable remedies. HTI seek its actual economic damages or alternatively its nominal damages, prejudgment interest, post judgment interest, court costs, attorney's fees and any other relief, both special and general, to which HTI may be entitled.

**ANSWER:** Denied.

## JURY DEMAND

90.     Plaintiff hereby demands a trial by jury on all issues so triable.

WHEREFORE, Plaintiff respectfully requests that the Court:

91.     Issue a temporary restraining order, preliminary injunction and permanent injunction enjoining Defendants and all other persons who are in active concert or participation with Defendants from continuing to infringe Plaintiffs copyrighted works and misappropriating Plaintiff's trade secrets by advertising, marketing, distributing, selling, licensing, or offering to distribute, sell or license the GeoMax Software;

92      Order that Defendants delete and permanently remove the digital files relating to Plaintiffs works from each of the computers or devices under Defendants' possession, custody or control;

93.     Order that Defendants delete and permanently remove the infringing copies of the works Defendants have on computers or devices under Defendants' possession, custody or control;

94.     Award Plaintiffs its damages and Defendants' profits in an amount to be ascertained;

95.     In the alternative, award Plaintiff statutory damages pursuant to 17 U.S.C. § 504 (a) and (c);

96.     Award Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505;

97.     Award Plaintiff pre judgment and post judgment interest at the maximum legal rate; and

98.     Grant Plaintiff any other and further legal or equitable relief this Court deems just and proper.

**ANSWER:**  No answer is necessary as no allegations are stated.  Defendants deny that Plaintiff is due any relief whatsoever, whether to damages, injunctive relief, fees, costs, or interest.

58227584;1

### First Defense:  Failure to State A Claim

The Complaint fails to state a claim upon what relief may be granted, as Plaintiff cannot establish each element of the asserted causes of action.

### Second Defense:  Lack of Customers

Plaintiff's claims are based in whole or in part because Plaintiff cannot show that, but for any actionable alleged conduct by Defendants, customers would have continued to buy Plaintiff's products or services.

### Third Defense:  Invalid Contract

Plaintiff's claim are barred in whole or in part because they are based on an invalid contract.

### COUNTERCLAIMS

Counterclaim Plaintiff Dominic Whitham ("Whitham") hereby brings his Counterclaims against Counterclaim Defendant, Horizontal Technologies, Inc. for intentional infliction of emotional distress, breach of contract, and for a declaratory judgment of contract invalidity, and in support alleges:

1.      Whitham is a citizen of Wyoming residing in Clark, Wyoming.

2.      Horizontal Technology, Inc. ("HTI") is corporation organized and existing under the laws of Texas within a principal place of business at 16883 Warren Ranch Road, Hockley, Texas 77447.

3.      These claims arise under the laws of the State of Wyoming.

4.      This Court has subject matter jurisdiction under Title 24 U.S.C.(a), diversity jurisdiction.

5.      Counterclaim Defendant HTI is subject to this Court's personal jurisdiction by virtue of having initiated litigation in this District.

6.      Venue is proper in this court pursuant to 28 U.S.C. 1391 (b)(2).

7.    The amount in controversy exceeds $75,000 exclusive of interests and costs.

## FACTS

8.    Starting in 1988, Whitham began creating Prosurv products.

9.    Around 1999 HTI purchased 10 copies of Whitham's Prosurv 2000 Data Collection software/hardware.

10.    Around 2000 Whitham was approached by Don Chaddock of HTI to help it "fix" its HT Steer software and make it fully functional.  He did so.

11.    For the next 17 years Whitham worked exclusively for HTI, providing them with new software and applications and maintaining applications by providing upgrades, bug fixes, and new capabilities as needed.

12.    Around 2003, Don Chaddock and John English talked with Whitham about providing Prosurv algorithm capabilities to HTI Steer.  He added various modules including the Baseline modules of Prosurv Baselines and Prosurv State Plane Coordinates from the Prosurv code into the HTI Steer program while monitoring the copyrights.

13.    At the top of the modules he included REM statements of his existing copyrights.

14.    The Prosurv modules gave HTI a vast competitive edge over the competition.

15.    In 2005, Whitham sought to display a screen acknowledging his copyrights in an "About Box."  John English ordered him to remove it, saying he did not want anyone to know who his programmer was.

16.    Whitham continued to allow HTI to use his code as an authorized usage.

17.    Whitham's copyrighted source code is used in the following HTI products:

1.    Data Trax Drill (formerly "HT Steer" and HT Drill Point")

2.    Data Trax CAD

3.      Data Trax ARM (Automated Reporting Module)

4.      Data Trax Engineering Solution (DES)

5.      Data Trax Earth (on-line Microsoft MVC web application)

6.      Data Trax Drill Earth Assistant

18.     Without Prosurv Baseline technology, HTI would not be able to drill horizontal and vertical geometry simultaneously.  Specifically, the baseline technology gives HTI software the capability to drill along a horizontal geometry that includes any number of line and curves, while at the same time, following a vertical geometry that contains vertical lines and vertical curves.

19.     Without Prosurv State Plane Coordinates technology, HTI's software would be unable to project and transform coordinates into the real world, such as analyzing their surveyed position at specific location and onto satellite imaging.

20.     To summarize, prior to February 10, 2017, Prosurv Baseline and State Plane Coordinates algorithms had been introduced first into HT Steer and then into Data Trax Drill.

21.     These algorithms consist of several modules 100% owned by Whitham.

22.     Whitham allowed these modules to be used with permission.

23.     HTI had clear knowledge of this arrangement, since they were receiving copies of the source code periodically, which contained copyright notices at the top of each module, among other things.

24.     On February 10, 2017 Whitham received an email from Mr. John Cain whose firm, Fleckman and McGlynn, had been hired by HTI to file copyrights for HTI's Data TraX products.

25.     After replying to Mr. Cain's request, and after thoroughly answering all questions, including the fact that he owned certain modules and classes  (Prosurv Baselines and State Plane Coordinates), Mr. Cain replied with the following:

*"I will need to prepare a simple agreement that confirms your understanding about the copyright ownership just because such arrangements need to be in writing."*

26.     Mr. Cain had also searched for and found Whitham's Prosurv copyrights (4 of them). Note that the algorithms HTI uses are only part of the Prosurv Data Collection, and not the whole thing, whereas these copyrights are the entire PDC, relating to each version that had been produced.

27.     On April 7, 2017 John English asked if Whitham and his attorney have "gotten together on the copyright…".

28.     On April 7, 2017 John English emailed Whitham:

*"I seem to be having communication issues with the attorney. Please make copies and a disk with all the info he asked for plus all our source codes. I will place them in the safe here before giving to him. Fed ex to our office."*

29.     On May 11, 2017 John English emailed Whitham:

*Please let me know you are providing the info needed from the attorney's request so we can move forward with the copyright."*

30.     On May 17, 2017 John English emailed Whitham:

*Please call me.*
*Call me.*

31.     Whitham called John English and explained everything to him. Whitham suggested English call his attorney regarding creating a simple agreement. He got very upset on the phone and hung up.

32.     On May 18, 2017 Don Chaddock [at the direction of John English] emailed Whitham as follows:

*"Thanks for the email. If we don't own the programs we have developed then there is a difference of opinions but that is fine, we can hash that out.* **For now, you can stand down, stop work and are relieved of any work we have ongoing, at this time."**

33.     On May 19, 2017 John English emailed as follows:

> " There is still a lot of work to be done.  We are not happy with the slow
> progress and lack of communication but some progress was better than
> none.  That said; We own our software.  We cannot continue as long as
> you raise questions about who owns the work you have done for us.
> Therefore, as Don told you yesterday, we need to stop."

34.     Whitham emailed John English on May 19, 2017:

> "What's changed is that you are demanding a written agreement,
> after all of these years.  You fail to understand that certain parts
> of all of the HTI software are my code, wholly owned by
> me/Prosurv.  The rest of the software is yours, except for those
> parts owned by someone else as well.  And now you've threatened
> to blackmail me into agreeing that you own my code.  If you don't
> get that written statement, I lose my job.  Do I have that right?

John English's response:

> "...We haven't and will not threaten anything.  If you think you
> own our existing software it makes it very difficult for HTI to
> continue asking you to write us new software."

35.     Whitham's May 22, 2017 email to English:

> "You still owe me a check for my work from last week. I expect it will
> arrive tomorrow, as normal."

John English's response:

> "We own our software.  We cannot continue as long as you raise
> questions about who owns the work you have done for us.
> Therefore, as Don told you yesterday, we need to stop."

36.     On May 22, 2017 John English emailed as follows:

> "We can get back to work once this issues is resolved.  We are
> not claiming any rights to software written for anyone else or for
> yourself.  However, any software placed in the software written
> for us is part of what we paid for. The package is ours and can be
> used as we deem necessary.  Not your "as long as I let you use it"
> BS.  When this is resolved we will get back to work."

37.     Whitham's next email to John English:

> *"Earlier today, I said what you're doing is blackmail.  But it's not.  Actually what it is, is extortion.  Bullying me by "stopping work" (i.e. suspending my pay) until I agree to your terms, is practically the definition of extortion.  I will be sending a demand letter and filing a lawsuit against you and HTI."*

John English's response:

> *"OK, so what would a software based on or similar to your preserve software cost us to write specifically for our program?"*

38.     Whitham's next email to John English:

> *"After a lengthy explanation on the value of PB and SPC, I said: "Therefore, I would place the current value – in other words the value that I'm placing on the Prosurv code, at this time, to be worth $2M USD.  That would be my selling price."*

John English's response:

> *"We will continue down another path."*

39.     Thus, rather than negotiating a deal, or offering to pay a monthly or yearly license fee for the Prosurv algorithms being used in each of the applications (5 apps in total), John English instead opted to "put the squeeze" on Whitham by laying him off, not sending my current check, and stopping all work until, as he put it "I come to my senses.".

40.     Whitham's 5/25/2017 email to John English:

> *"You owe me the check. And you owe me to continue use of my Prosurv products. If you do not allows us to negotiate an agreement then I will remove all Prosurv code from the Data TraX programs, and you will have to stop using all of the Data TraX products.  I will file a cease and desist order IMMEDIATELY."*

John English's response:

> *"Extortion!  Extortion!  Citizens arrest…"*

41.     Whitham's 5/25/2017 email to John English**:**

>    *"This is an official notification to cease and desist the usage of*
>    *all Data TraX products.  Do you really think this is funny, John?*

John English' response:

>    *"No, I think it is sad. We own and paid for all our software.  You*
>    *have zero say I where and how it is used."*

42.     At this time all work has been stopped, and John English refuses to negotiate. Further, he still owes check(s) for work already done.

43.     Whitham tried contacting HTI's copyright attorney, Mr. Cain to see if he could talk to John English.  But Mr. Cain was out for two weeks, on vacation.

44.     Whitham and his family endured financial hardship for the next two months, trying to get by on no income.  His older son was in High School and obviously needed cash for gas (30 miles each way every day).  His younger son was only 7 years old.

45.     Finally, he received a call from John English on 26 July 2017.  He wanted to make a deal for $80,000.00 in two payments of $40K each.  Whitham reluctantly agreed due to the fact that he was broke and his house was in foreclosure and he signed under duress.  Whitman suffered a great deal of anxiety and stress.

46.     Rather than continuing work (and Whitham's his pay), John English instead employed an extortion scheme tactic of squeezing Whitham to get what he wanted.  This would have easily come to an agreement, as his attorney Mr. Cain had suggested.  But English refused to even discuss the matter.

47.     Thus, the May 2017 transfer is null and void, having been signed under duress, and HTI is currently using unlicensed copies of Prosurv Baselines and State Plane Coordinates algorithms.

48.     On or about 20 April 2018, Whitham spoke to John English about selling him his Prosurv Data Collection copyrights, as he and his family were seeking a fresh start in TX, and he wanted seed money for the move down there.  The conversation, which took place in the kitchen of HTI headquarters, went like this:

49.     John English offered Whitman $5K.

50.     He said that was way too low.  He was asking $50K so he'd have enough seed money for the move, with the idea being that he would then come in to HTI every day, or at least be very close to their home base.

51.     He said I can't do $5K.

52.     English offered $10K.  Whitham was very reluctant and hesitant.

53.     Then English said the following:

        "Well, you'll still be getting your check every week", and

        "There's plenty of work to do."

He also said "Prosurv Data Collection is obsolete anyway".

54.     Whitham still wasn't sure.  However, what English had said about the continued work and the checks convinced him.

55.     So with that in mind, and ONLY due to what English had said about still getting a check each week, made him agree to the deal.

56.     Then, on or before May 9, 2018, HTI locked Whitham out of their source code repository permanently (so that he could no longer work on their applications), and he was no longer working for HTI (even though they were in the middle of ongoing projects and had just finished discussing what he'd be working on, next, while he was at their office in TX just 2 weeks before).

57.     Thus, John English reneged on his verbal agreement that Whitham would still get weekly checks, and that there was plenty of work to do.

## COUNT I
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

1.     Defendants reallege paragraphs 1 - 58 as if fully stated herein.

2.     HTI's extreme and outrageous conduct in 2017 as described above resulted in severe emotional distress to Whitham.

3.     At the time that HTI unilaterally tried to possess the Prosurv Copyright, and ultimately succeeded with Whitham signing under duress the May 2017 transfer, Whitham was in trouble financially due to losing his job and had a major family issue to deal with.  The situation created by HTI caused him severe anxiety and emotional distress.

## COUNT II
## Breach of Contract (2018 Transfer)

4.     Defendants reallege paragraphs 1 - 58 as if fully stated herein.

5.     HTI failed to follow the conditions of the oral contract of the April 2018 transfer.

6.     HTI is thus in breach of the oral terms of the contract of April 28.

## COUNT III
## (Declaration of Contract Invalidity)

7.     Defendants reallege paragraphs 1 - 58 as if fully stated herein.

8.     This Count is brought pursuant to Fed.R.Civ.P. 57 and 28 U.S.C. §§2201 and 2202.

9.     Counterclaim Plaintiff seeks a declaration that the May 2017 transfer is invalid as having been signed under duress

10.     At the time of transfer Whitham was suffering from anxiety and depression, had lost his job, and his house was in foreclosure mainly due to HTI's actions.

58227584;1

11.     He had no choice but to take the money offered and thus signed the May 2017 transfer under duress, making it invalid.

WHEREFORE, Counterclaim Plaintiff respectfully requests that this Court enter judgment in its favor as follows:

A.     Awarding Counterclaim Plaintiff damages, including punitive damages for Third Party Defendant's willful breach of contract and intentional infliction of emotional distress.

B.     Declaring this case exceptional and awarding Counterclaim Plaintiff's attorneys' fees and costs,

C.     Declaring the May 2017 transfer invalid due to duress, and

D.     Awarding Counterclaim Plaintiff such other and further relief as this Court deems just and proper.

## JURY DEMAND

Counterclaim Plaintiff requests a trial by jury on all issues so triable.

Date:  May 17, 2021                    Dominic Whitham and Prosurv, LLC


By Their Attorneys:


*/s/ Gregory C. Dyekman*
Aaron John Lyttle
Gregory C. Dyekman
Long Reimer Winegar LLP
P.O. Box 87
Cheyenne, WY 82003
alyttle@lrw-law.com
gdyekman@lrw-law.com

- 32 -

58227584;1

Thomas G. Pasternak (*pro hac vice*)
Akerman LLP
71 South Wacker Drive
46th FL.
Chicago, IL 60606
Tel: (312) 634-5700
thomas.pasternak@akerman.com

*Attorneys for Defendants*

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document, DEFENDANTS'

ANSWER, DEFENSES AND COUNTERCLAIMS has been served upon:


Dallas Lain
Crowley Fleck PLLP
106 East Lincolnway
Suite 300
Cheyenne, WY 82001
dlain@crowleyfleck.com


Robert C. Griffin
Crowley Fleck PLLP
500 TW II
490 North 31st St.
P.O. Box 2529
Billings, MT 59103
rgriffin@crowleyfleck.com

by electronic filing on this 17th day of May, 2021.


*/s/ Gregory C. Dyekman*
Long Reimer Winegar LLP

- 33 -

58227584;1